IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| SEAN YOCUM, | ) | |
| *surviving brother of* LANCE A. YOCUM | ) | |
| *as Trustee Ad Litem and as* | ) | |
| *Administrator of the Estate* | ) | |
| *of* LANCE A. YOCUM, *Deceased*, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 12-1530 |
| | ) | United States Magistrate Judge |
| RHONDA HERMICK, R.N., | ) | Cynthia Reed Eddy |
| STEPHANIE SOMOGIE, L.P.N., | ) | |
| CASEY JENNINGS, SEAN SHIRLEY, | ) | |
| JOAN BELL, ALBERT FAY, | ) | |
| GERVAIS HANNON; TRINA HALL; | ) | |
| COUNTY OF BEAVER d/b/a FRIENDSHIP | ) | |
| RIDGE and PREMIERE HEALTHCARE | ) | |
| RESOURCES, | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

For the reasons set forth below, I respectfully recommend that the three pending Motions to Dismiss (ECF Nos. 21, 23 and 39) be granted in part and denied in part.

**II.   REPORT**

**A.   The Amended Complaint**

Sean Yocum, surviving brother of Lance A. Yocum, Trustee Ad Litem and Administrator of the Estate of Lance A. Yocum, filed a Complaint in the Court of Common Pleas of Beaver County against the "County of Beaver, d/b/a Friendship Ridge," Premiere Health Services, Inc., and six individual medical/mental health providers, raising wrongful death and survival claims under Pennsylvania statutes, 42 Pa.C.S. §§ 8301 and 8302, respectively, as well as federal civil rights claims pursuant to 42 U.S.C. § 1983. The section 1983 claims allege that defendants,

1

under color of state law, deprived Lance Yocum of rights secured to him by the Constitution of the United States, federal medical/mental healthcare related statutes and regulations, Pennsylvania equivalent statutes and regulations, and the United States Crimes Code. Defendants removed the case to this Court on October 22, 2012, pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and § 1441(a) (removal jurisdiction).

Plaintiff filed an Amended Complaint on November 19, 2011 (ECF No. 16) which modified his theories of liability and added two individual defendants. The Amended Complaint alleges that on April 29, 2011, Lance Yocum was involuntarily committed to Friendship Ridge, a public-run, long term structured residence facility providing mental health treatment, pursuant to section 304(c) of the Pennsylvania Mental Health Procedures Act, as amended, 50 Pa. Stat. ann. § 7304(b) (court-ordered involuntary treatment not to exceed ninety days). Friendship Ridge is owned by Beaver County. The Amended Complaint avers that the day after Mr. Yocum's admission to Friendship Ridge, he was administered prescription medications intended for another resident at the facility, an egregious mistake that proved fatal, that none of the defendants took any emergency measures to save him after obvious life-threatening side effects became apparent, and that defendants participated in a cover-up to hide their mistake and the cause of death. Amended Complaint (ECF No. 16, ¶¶ 17-54). Mr. Yocum died on April 30, 2011 due to the alleged "erroneous ingestion of medications meant for another patient," *id*. at ¶ 53, and defendants' gross negligence and deliberate indifference in failing to treat Mr. Yocum following the erroneously administered medication and the life-threatening side effects resulting therefrom.

Defendants are Rhonda Hermick, R.N.; Stephanie Somogie, L.P.N.; Casey Jennings, Sean Shirley, Joan Bell, Albert Fay and, added by the Amended Complaint, Gervais Hannon and Trina Hall, all identified as "Mental Health Aides"; "County of Beaver, d/b/a Friendship Ridge";

and Premiere Healthcare Resources, Inc. Amended Complaint, (ECF No. 16, ¶¶ 5-15).[1] Nurses Hermick and Somogie are each described as having acted "in her individual capacity, in a supervisory capacity, and/or as an employee, agent, ostensible agent, and/or servant of Defendant Friendship Ridge and/or Defendant Premier Healthcare Resources, Inc. Alternatively, Defendant . . . was acting under color of state law."  The Mental Health Aides are described in almost identical terms, except they are not said to have been acting in any "supervisory capacity." Amended Complaint, (ECF No. 16, ¶¶ 7-12). The Amended Complaint asserts that the Defendants are bound by the 1987 Omnibus Reconciliation Act and the Federal Nursing Home Reform Act ("FNHRA"), 42 U.S.C. § 1395i-3, and implementing regulations, which are "rights-creating" statutes setting professional standards for facilities and providers of medical and mental health services, and by Pennsylvania's counterpart laws and regulations, and that defendants' deliberate, reckless and/or gross deviation from those standards, their conscience-shocking conduct and their deliberate indifference to Lance Yocum's health and safety, violated Lance Yocum's rights guaranteed by the Constitution and laws of the United States, in violation of 42 U.S.C. § 1983. Amended Complaint, (ECF No. 16, ¶¶ 58-69).

The structure of the Amended Complaint is somewhat unorthodox; each individual defendant has his or her own separate Count, but each such Count makes the same set of averments and multiple claims or theories of liability against each defendant. Amended

---

[1] Presumably, Premier is a private corporation under contract with Beaver County to provide mental health care services to the patients at Friendship Ridge, although the Amended Complaint does not purport to make that claim. Plaintiff thus resorts to "and/or" to describe the employment or agency relationships of the various individual defendants to "Friendship Ridge and/or Premier Healthcare." It is not necessary for resolution of the issues raised in the several motions to dismiss to know the precise nature of each employment or agency relationship, although it will probably become important as this litigation progresses.

Complaint, (ECF No. 16, Counts I through VIII, ¶¶ 71-134). Each of these Counts describes a named defendant's conduct allegedly leading to Mr. Yocum's death, and raises a number of theories or claims for compensatory and punitive damages within each Count under the section 1983 rubric, namely that there existed a custom or practice to: deprive Mr. Yocum of rights secured by section 1983 and the Fourteenth Amendment; deprive Mr. Yocum of rights secured by 42 U.S.C. § 1395i-3, 35 P.S. §§ 448.101 *et seq.*, and federal and state implementing regulations; to deprive Mr. Yocum of his right to life secured by the United States Crimes Code, 18 U.S.C. § 1112, Involuntary Manslaughter; and further, each defendant's conduct is said to constitute willful misconduct and "criminal behavior" proscribed by 42 Pa.C.S.A. § 8550. *E.g.*, Amended Complaint, Count I against R.N. Hermick (ECF No. 16, ¶¶ 71-78). The Counts against Friendship Ridge and Premier add *Monell* language[2] regarding their respective failures to train, supervise or discipline their employees, servants, agents, etc., and, also, drop the section 1983 theory that the criminal prohibition against involuntary manslaughter, 18 U.S.C. § 1112, creates a private right of action for victims of that offense. Otherwise, these two Counts are very similar to those naming the individual defendants. Amended Complaint, Counts IX and X (ECF No. 16, ¶¶ 135-150).

### B. The Motions to Dismiss

**1. (ECF No. 21) – Motion to Dismiss by Defendants Rhonda Hermick, R.N., Stephanie Somogie, L.P.N., Casey Jennings, Sean Shirley, Joan Bell and Albert Fay**

These individual defendants make the following challenges to Plaintiff's Amended Complaint: (1) Friendship Ridge is a long-term structured residence, not a skilled nursing

---

[2] *Monell v. Dep't of Soc. Serv.*, 436 U.S. 658 (1978).

facility, healthcare facility or other facility subject to the statutes and regulations cited by Plaintiff, and these Defendants, as employees of Friendship Ridge, are not subject to the cited statutes and regulations. (2) Even if any of the cited statutes and/or regulations apply, they apply only to the facility and not to the individual employees thereof. (3) The cited statutes and regulations are irrelevant because Plaintiff is not suing for enforcement of his statutory rights or benefits, but is instead suing for his Decedent's loss of life, a constitutional right. (4) Plaintiff's assertion that Defendants' conduct constituted involuntary manslaughter is outrageous and wholly unsupported. (5) To the extent any ordinary and/or professional negligence claims remain in the Amended Complaint, the moving Defendants are immune under the Pennsylvania Political Subdivisions Tort Claims Act. (6) Although Plaintiff has alleged, in conclusory fashion, that the conduct of the moving Defendants was deliberately indifferent, grossly negligent, willful, wanton, reckless, etc., he has not set forth sufficient facts to establish deliberate indifference to his medical emergency, which is necessary to support a claim for violation of the Eight Amendment under 42 U.S.C. § 1983. (7) Plaintiff's claims for punitive damages must be stricken because punitive damages are not recoverable under any of the claims set forth in Plaintiff's Complaint.

2. **(ECF No. 23) – Defendant County of Beaver, d/b/a Friendship Ridge's Motion For Partial Dismissal Of Plaintiff's Amended Complaint Pursuant To Rule 12(B)(6)**

County of Beaver, d/b/a Friendship Ridge, seeks to dismiss portions of the Amended Complaint on the following grounds: (1) Plaintiff's claim that Beaver County violated Lance Yocum's rights under the FNHRA, 42 U.S.C. § 1395i-3, is misguided because that provision only creates rights for individuals who are residents of "skilled nursing facilities," which does not include an institution that is "primarily for the care and treatment of mental diseases," such

as Friendship Ridge; because Mr. Yocum was a resident of a mental health facility, and not a skilled nursing facility, he may not assert rights under the FNHRA, and the section 1983 claims based on violations of this statute must be dismissed. (2) Because a private citizen does not have a private cause of action for violations of federal criminal statutes, Plaintiff's claim based on a violation of a provision of the federal crimes code criminalizing involuntary manslaughter, 18 U.S.C. § 1112, must be dismissed. (3) Any claims under cited Pennsylvania statutes and implementing regulations must be dismissed because these laws provide no private right of action. (4) Punitive damages are not available in a section 1983 action against a political subdivision.

**3. (ECF No. 39) - Defendants Hannon And Hall's Motion To Dismiss Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6)**

These individual defendants assert: (1) Plaintiff's claim based on alleged violation of the FNHRA must be dismissed because that statute only provides rights to individuals that are residents of "skilled nursing facilities," not of an institution that is "primarily for the care and treatment of mental diseases." (2) The alleged "nonfeasance" of Ms. Hannon and Ms. Hall in not contacting a physician or the hospital when Mr. Yocum was in obvious distress does not rise to the level of a constitutional violation. (3) Any claim based on a purported violation of 18 U.S.C. § 1112 criminalizing involuntary manslaughter must be dismissed because a private citizen does not have a private cause of action for violations of federal criminal statutes. (4) Plaintiff's claim that these defendants violated Mr. Yocum's rights under the PHCFA must be dismissed because the PHCFA does not provide for a private cause of action. (5) Punitive damages are not

recoverable against a county employee in his/her official capacity in an action under Section 1983.[3]

### C. Fed.R.Civ.P. 12(b)(6) Standards

In light of the Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), a complaint may be dismissed pursuant to Rule 12(b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 570). While *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957) allowed dismissal of a claim only if "no set of facts" could support it, under *Twombly*, and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), a claim for relief under Rule 12(b)(6) now "requires more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*, 550 U.S. at 555; *Iqbal*, 556 U.S. at 678.

In *Iqbal*, the Supreme Court held that a claim is facially plausible when its factual content allows the court to draw a reasonable inference that the defendants are liable for the misconduct alleged. *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The plausibility standard in *Iqbal* "asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. While well-pleaded factual content is accepted as true for purposes of whether the complaint states a plausible claim for relief, legal conclusions couched as factual allegations or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to an assumption of truth. *Iqbal*, 566

---
[3] Hall and Hannon were served with the Amended Complaint in April, 2013, and filed their timely Motion to Dismiss (ECF No. 39) on May 3, 2013. The Court ordered Plaintiff to respond to this motion to dismiss by May 28, 2013, but inasmuch as this motion raises the same matters raised and briefed by both sides in the motion to dismiss filed at (ECF No. 21), the Court deems the response to (ECF No. 39) to be unnecessary to informed resolution of the issues raised.

U.S. at 678. "Where the well-pleaded facts do not permit the court to infer more than a mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" *Iqbal*, 566 U.S. at 679 (quoting Fed.R.Civ.P. 8(a)(2)). In order to satisfy the requirement of Fed.R.Civ.P. 8(a)(2) that a plaintiff include a "short and plain statement of the claim showing that the pleader is entitled to relief," a plaintiff must aver sufficient factual allegations which "nudge" its claims "across the line from conceivable to plausible." *Id*.

As the Court of Appeals for the Third Circuit explained in *Fowler*, 578 F.3d at 210–11:

> . . . The Supreme Court's opinion in Iqbal extends the reach of *Twombly*, instructing that all civil complaints must contain "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949.
>
> Therefore, after *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id*. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id*. at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234–35. As the Supreme Court instructed in *Iqbal*, ... [the] "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

*See also Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 674, 679); *Burtch v. Milberg Factors, Inc.,* 662 F.3d 212, 221 (3d Cir. 2011), *cert. denied*, ___ U.S. ___, 132 S.Ct. 1861 (2012); *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

In considering a Rule 12(b)(6) motion, a court accepts all of the plaintiff's allegations as true and construes all inferences in the light most favorable to the non-moving party. *Umland v.*

*Planco Fin. Servs.*, 542 F.3d 59, 64 (3d Cir. 2008) (citing *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006)). However, a court will not accept bald assertions, unwarranted inferences, or sweeping legal conclusions cast in the form of factual allegations. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 215 (3d Cir. 2002); *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 n. 8 (3d Cir. 1997). A court is not required to consider legal conclusions; rather, it should determine whether the plaintiff should be permitted to offer evidence in support of the allegations. *Maio v. Aetna*, 221 F.3d 472, 482 (3d Cir. 2000).

Therefore, a plaintiff must put forth sufficient facts that, when taken as true, suggest the required elements of a particular legal theory. *See Wilkerson v. New Media Tech. Charter Sch., Inc.*, 522 F.3d 315 (3d Cir. 2008) (citing *Phillips*, 515 F.3d at 224). This standard does not impose a heightened burden on the claimant above that already required by Rule 8, but instead calls for fair notice of the factual basis of a claim while raising a "reasonable expectation that discovery will reveal evidence of the necessary element." *Weaver v. UPMC*, 2008 WL 2942139, *3 (W.D.Pa. July 30, 2008) (citing *Phillips*, 515 F.3d at 234; and *Twombly*, 550 U.S. at 555).

**D.  Application – Discussion**

**1.  Deliberate Indifference – Shocks the Conscience**

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. Const. amend. VIII. To state an Eighth Amendment violation in the context of medical treatment, an inmate or other person in the custody of the state must prove two elements: (1) the plaintiff was suffering from a "serious medical need," and (2) state officials were deliberately indifferent to the serious medical need. *Gamble v. Estelle*, 439 U.S. 897 (1978). "Mere allegations of malpractice" or "mere disagreement as to the proper medical treatment" do not support an Eighth Amendment claim. *White v. Napoleon*, 897 F.2d 103, 109 (3d Cir. 1990).

9

The test for "deliberate indifference" is a subjective one. *Farmer v. Brennan*, 511 U.S. 825, 840 (1994). Under this test, "it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm." *Id.* at 842. The existence of this subjective state of mind may be inferred from the obviousness of the risk of harm. *Id.* "[C]laims of negligence or medical malpractice, without some more culpable state of mind, do not constitute 'deliberate indifference.'" *Rouse*, 182 F.3d at 197. Because "an inadvertent failure to provide adequate medical care cannot be said to constitute 'an unnecessary and wanton infliction of pain,'" *id.* (quoting *Estelle*, 429 U.S. at 105), deliberate indifference requires "'obduracy and wantonness,' which has been likened to conduct that includes recklessness or a conscious disregard of a serious risk." *Id.* (internal citations omitted).

For example, deliberate indifference has been found where prison authorities deny reasonable requests for medical treatment and the denial "exposes the inmate 'to undue suffering;'" or where "necessary medical treatment [i]s . . . delayed for non-medical reasons." *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 346 (3d Cir. 1987) (internal citations omitted). Additionally, deliberate indifference has been shown when "prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to [a] physician capable of evaluating the need for such treatment." *Lanzaro*, 834 F.2d at 347 (quoting *Inmates of Allegheny County Jail v. Pierce*, 612 F.2d 754, 762 (3d Cir. 1979)).

It requires no extended discussion of his averments and analysis to conclude that Plaintiff has set forth more than sufficient facts to support his claim of deliberate indifference to his medical emergency under the foregoing substantive and pleading standards. Accordingly, defendants' arguments to the contrary are without merit, and Plaintiff's claims of deliberate

indifference to medical needs under the Eight Amendment and section 1983 should survive the motions to dismiss.

### 2. "Rights" Under Involuntary Manslaughter Statute – 18 U.S.C. § 1112

It also requires little discussion to dismiss Plaintiff's claims predicated on a violation of any rights due him by the federal criminalization of involuntary manslaughter, 18 U.S.C. § 1112. This statute is found in Title 18 of the United States Code, Crimes and Criminal Procedure. As a rule, criminal actions may only be brought by the state and not by individuals.

With limited exceptions, none of which apply to section 1983 actions, federal law does not allow a private citizen to proceed against another citizen pursuant to a criminal statute. *See Maine v. Taylor,* 477 U.S. 131, 136 (1986) (private citizens may not file lawsuits under Title 18 of the United States Code; criminal statutes may be enforced by the United States and its attorneys only); *Baker v. City of Hollywood*, 2008 WL 2474665, *9 (S.D.Fla. 2008) (citing, *inter alia*, *Zachay v. Metzger*, 967 F.Supp. 398, 403 (S.D.Cal. 1997) ("Civil causes of action, however, do not generally lie under the criminal statutes contained in Title 18 of the United States Code."); *Gipson v. Callahan*, 18 F.Supp.2d 662, 668 (W.D.Tex. 1997) (holding the plaintiff had no private cause of action under 18 U.S.C. § 1512) (citations omitted); *Barnard v. Pavlish,* 1998 WL 247768, *7 (M.D.Pa. 1998) (collecting cases).

As Plaintiff has no private right of action under 18 U.S.C. § 1112, the motions to dismiss Plaintiff's section 1983 claim predicated on violation of that criminal statute should be granted and the claims dismissed.

### 3. **Punitive Damages**.

The Court agrees with defendants that punitive damages are not available in a section 1983 civil rights suit against governmental entities or against an officer acting in his or her

official capacity. *Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271 (1981); *Gregory v. Chehi*, 843 F.2d 111, 120 (3d Cir. 1988). However, punitive damages may be considered against individual defendants with regard to conduct performed in their individual capacities. "[A] jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).

Plaintiff's claims for punitive damages against the County of Beaver and its officials, employees and agents, to the extent they were acting in their official capacities, must be dismissed, although the punitive damages may be viable for conduct performed in their individual capacities.

### 4. Federal Rights Arguably Created By 42 U.S.C. § 1395i-3

The Amended Complaint asserts that the corporate and individual Defendants are each bound by the 1987 Omnibus Reconciliation Act and the Federal Nursing Home Reform Act (FNHRA), 42 U.S.C. § 1395i-3, and implementing regulations, which are "rights-creating" statutes setting the professional standards for facilities and providers of medical services to their patients, and that failure to abide by these standards is actionable under 42 U.S.C. § 1983 as a deprivation of a right created by federal statute. Defendants seek dismissal of those claims because, they assert, Friendship Ridge was a "long-term structured residence," not a skilled nursing facility, healthcare facility or other facility subject to the statutes and regulations cited by Plaintiff, and neither Friendship Ridge or its individual officers and employees are subject to the cited statutes and regulations. This argument is premature and must await further factual development before the Court may render an informed decision.

Section 1983 "is not itself a source of substantive rights, but [rather] a method for vindicating federal rights elsewhere conferred." *Elmore v. Cleary*, 399 F.3d 279 (3d Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 145 n. 3 (1979)). In order to seek redress through section 1983, a plaintiff must assert the violation of a federal right, not merely a violation of federal law. *Blessing v. Freestone*, 529 U.S. 329, 340 (1997) (citing *Golden State Transit Corp. v. Los Angeles*, 493 U.S. 103, 106 (1989)).

Whether a particular federal statute "creates a federal right of the kind enforceable by an action for damages under § 1983 requires [the court to] determine whether or not Congress intended to confer individual rights upon a class of beneficiaries." *Thrower v. Pennsylvania*, 873 F.Supp.2d 651, 654 (W.D. Pa. 2012) (citing *Grammer v. John J. Kane Reg'l Ctrs.-Glen Hazel*, 570 F. 3d 520, 525 (3d Cir. 2009). A plaintiff bears the burden of establishing that a statute gives rise to federal rights enforceable through section 1983. *Id*.

In the *Thrower* case, the mother of a deceased resident of a state-run intermediate care facility for individuals with intellectual disabilities brought action in state court against the state, the facility, physicians, directors and administrators of the facility, asserting claims of violations of the Medicaid Act and deprivation of rights secured thereby, pursuant to 42 U.S.C. § 1983. District Judge Kim R. Gibson denied motions to dismiss the Medicaid predicated claims, holding that the cited provisions of the Medicaid Act, Omnibus Budget Reconciliation Act of 1987, Title XIX of the Social Security Act, 42 U.S.C. §§ 1396-1396v, and the implementing regulations, 2 C.F.R. § 483.400 *et seq.*, created individually enforceable rights. Judge Gibson summarized the prescribed analysis for making the determination as follows:

> To determine whether a statute gives rise to federal rights enforceable through § 1983, the Third Circuit has directed courts to follow the test announced by the Supreme Court in *Blessing v. Freestone*, 520

13

> U.S. 329 (1997), as clarified by *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002):
>
>> first, courts should determine whether Congress intended that the statutory provision in question benefits the plaintiff; second, courts should decide whether the right asserted is so "vague and amorphous" that its enforcement would strain judicial competence; and lastly, courts should determine whether the statute unambiguously imposes a binding obligation on the states.
>
> *Grammer*, 570 F. 3d at 525 (citing *Blessing*, 520 U.S. at 340–41, 117 S.Ct. 1353). If these three elements are met, then courts must inquire into whether the statute in question unambiguously confers a substantive right by using rights-creating terms. *See id*. at 527; *Medevac MidAtlantic, LLC v. Keystone Mercy Health Plan*, 817 F.Supp.2d 515, 521 (E.D.Pa. 2011). "Rights-creating terms are those that 'clearly impart an individual entitlement and have an unmistakable focus on the benefitted class.'" *Medevac*, 817 F.Supp.2d at 521 (quoting *Sabree v. Richman*, 367 F.3d 180, 187 (3d Cir. 2004)).

*Thrower*, 873 F.Supp. 2d at 655.

Application of the foregoing analysis led Judge Gibson to conclude "'without difficulty' that the provisions at issue in this case create individually enforceable rights . . . [and that] Plaintiff has satisfied her burden of establishing that the statutory provisions in question create federally enforceable rights through § 1983." *Id*. at 656.

The precise nature and structure of Friendship Ridge as a "skilled nursing facility," a "long term structured residence," or perhaps some other variation of Medicaid-speak facility, and whether Lance Yocum was a member of the class intended to benefit from standards set by 42 U.S.C. § 1395i-3, cannot be determined at this stage of the proceedings. The motions to dismiss claims predicated on violations of the standards of care mandated by this statute and its implementing regulations should, therefore, be dismissed, without prejudice to revisit the question on summary judgment.

### 5. Claims Based Upon Pennsylvania Mental Health Care Laws And Regulations

It is not clear that Plaintiff is in fact attempting to state a cause of action predicated upon alleged violations of Pennsylvania mental health care laws and regulations, *see* Beaver County's Memorandum of Law (ECF No. 22, at 16), although Plaintiff certainly cites some such laws and regulations in his Amended Complaint. If he is raising such claims, he would have to overcome the Pennsylvania Political Subdivisions Tort Claims Act ("Tort Claims Act"), which provides that "[n]o local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person," except for eight enumerated categories, none of which are applicable herein. 42 Pa.C.S. §§ 8541, 8542. Moreover, section 8545 provides that "[a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this [Act]." 42 Pa.C.S. § 8545.

Plaintiff's only response to this argument is that, although "Defendant Friendship Ridge claims that the Pennsylvania Health Care Facilities Act (PHCFA) does not provide for a private cause of action [and] both cases cited by the Defendant do, indeed, state that there is no private cause of action, these cases were decided before *Grammar [sic] v. John J. Kane Regional Centers–Glen Hazel*, 570 F.3d 520 (3rd Cir. 2009). In *Grammar* [sic], the Court rejected an analogous claim that there is no private cause of action under 42 U.S.C. §1396r. Our claim is consistent with the reasoning of *Grammar* [sic], which invalidates the cases relied upon by Defendant." Plaintiff's Response To Defendant County Of Beaver's Motion For Partial Dismissal Of Plaintiff's Amended Complaint Pursuant To Rule 12(b)(6) (ECF No. 25, sec. C, at 10).

The Court agrees with defendants that they are immunized from liability for Pennsylvania common law and statutory causes of action by the Tort Claims Act, and Plaintiff implicitly concedes as much by not responding at all to the immunity argument. Moreover, the fact that the *Grammer* case found a *federal* private cause of action under 42 U.S.C. §1396r via 42 U.S.C. § 1983 has no bearing whatever on whether Pennsylvania mental healthcare statutes and regulations create a private cause of action. In the absence of any authority to the contrary, any claims based upon violations of Pennsylvania laws and regulations regarding mental health care providers must be dismissed.

### III. Conclusion

For the reasons set forth above, this Court recommends that the three Motions to Dismiss (ECF Nos. 21, 23 and 39) be GRANTED in part, with respect to the "involuntary manslaughter claims, 18 U.S.C. § 1112, the Pennsylvania claims under its statutes and regulations, and the punitive damages claims against Beaver County and "official capacity" claims against its individual officials, employees and agents claims; and DENIED in part with respect to Plaintiff's Eighth Amendment claims of deliberate indifference for failure to call a doctor or take any emergency measures to treat and save Plaintiff after obvious life-threatening side effects of the improperly administered medications became apparent, and deprivation of rights created by 42 U.S.C. § 1395i-3 and implementing regulations.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) & (C), and the Local Rules, the parties are allowed fourteen (14) days from the date of service to file written objections to the recommendation that the dispositive motions to dismiss be denied. Any party opposing the objections shall have 14 days from the date of service of the objections to respond thereto. Failure to timely file objections will constitute a waiver of any appellate rights.

/s Cynthia Reed Eddy
Cynthia Reed Eddy
United States Magistrate Judge

cc: all ECF registered counsel